**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DINA BATISTE** | **CIVIL ACTION NO.** |
| **VERSUS** | |
| | **19-574-JWD-EWD** |
| **STRYKER CORPORATION AND STRYKER SALES CORPORATION** | |

    Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on April 22, 2020.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DINA BATISTE** | **CIVIL ACTION NO.** |
| **VERSUS** | |
| | **19-574-JWD-EWD** |
| **STRYKER CORPORATION AND STRYKER SALES CORPORATION** | |

### MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand (the "Motion"), filed by Dina Batiste ("Plaintiff").[1] The motion is opposed by Defendants Stryker Corporation and Stryker Sales Corporation (collectively, "Stryker").[2] For the reasons that follow, it is recommended[3] that the Motion, including the claim for costs and attorney's fees, be denied.

**I.    Facts and Procedural Background**

On July 18, 2019, Plaintiff filed suit against Stryker in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. In her Petition for Personal Injuries and Damages ("Petition"), Plaintiff alleges that, on or about November 12, 2015, she underwent a total left knee arthroplasty (*i.e.*, replacement) at Ochsner Medical Center in New Orleans, Louisiana, which involved the use of a knee implant manufactured by Stryker.[4] Plaintiff alleges she experienced "severe chronic pain and joint instability and limitations" and "bodily injuries"[5] after the 2015 surgery that resulted in a "complex, risky, and painful," second total left knee surgery ("revision")

---

[1] R. Doc. 7.
[2] R. Doc. 12.
[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).
[4] R. Doc. 1-1, ¶ 2.
[5] R. Doc. 1-1, ¶¶ 3, 7. Plaintiff claims that diagnostic testing revealed that the components of the knee implant looked "loose and kicked forward." *Id.* at ¶ 3.

in 2018 at Our Lady of the Lake Medical Center in Baton Rouge, Louisiana to remove and replace Stryker's defective implant.[6]  In connection with these allegations, Plaintiff asserts damages in the form of "bills for medical treatment," "other general and special economic and non-economic damages and losses," "physical and mental pain, permanent physical impairment, temporary and permanent work disability, change in lifestyle, loss of time, lost wages and benefits, loss of earning capacity, past and future, and loss of enjoyment of life, past and future."[7]  In keeping with Louisiana law,[8] Plaintiff did not specify a numerical value for her damages in the Petition.  She also did not state whether the federal jurisdictional amount was exceeded, however, Plaintiff did demand a jury trial.[9]

On August 29, 2019, Stryker removed the matter to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a).[10]  The Notice of Removal and Petition adequately establish that the parties are diverse, which is not disputed.[11]  On September 26, 2019, Plaintiff filed the instant Motion, contending that the case should be remanded because Stryker had not properly articulated a basis for removal and had not established that the amount in controversy is met.[12]  Specifically, Plaintiff argues for the first time in the Motion that, because the 2018 revision surgery was paid for by Medicaid with no patient responsibility,[13] the costs of the surgery, upon which

---

[6] R. Doc. 1-1, ¶¶ 3, 7, 12(a).  Plaintiff specifically claims that Stryker designed, manufactured and sold the defective prosthetic implant; and failed to exercise reasonable care and breached the implied warranty of merchantability and fitness with respect to the knee implant. R. Doc. 1-1, ¶¶ 18-20, 22-28.
[7] R. Doc. 1-1, ¶¶ 7, 12(a).
[8] La. Code Civ. P. art. 893(A)(1).
[9] R. Doc. 1-1, ¶ 30.  *And see* La. Code Civ. P. art. 1732, which permits trial by jury when the amount demanded exceeds $50,000.
[10] R. Doc. 1, ¶ 3.
[11] R. Doc. 1, ¶ 4 and R. Doc. 1-1, introductory paragraph (averring that Plaintiff is a domiciliary of Louisiana); R. Doc. 1, ¶¶ 5-6 (averring that both Stryker entities are incorporated in Michigan with principal places of business in Michigan).
[12] R. Doc. 7-2.
[13] R. Doc. 7-2 ("[T]he last replacement surgery to repair and replace the failed implant was completely covered by Medicaid with no outstanding patient responsibility; therefore, the related medical expenses will largely be those out of pocket costs not covered which will be minimal.")

2

Stryker relies in part to show the requisite amount in controversy, have not been established. Plaintiff also seeks an award of the costs and fees associated with the filing of the Motion pursuant to 28 U.S.C. § 1447(c).[14] After Stryker filed its opposition memorandum, Stryker was ordered to file a supplemental brief regarding the amount in controversy, particularly addressing the amount of medical expenses paid by Medicaid and written-off by Plaintiff's medical providers, because, in light of Plaintiff's remand allegations, it was unclear whether the amount in controversy was met.[15] In its supplemental brief, Stryker admits it does not have any additional information regarding medical expenses paid, but argues that it is facially apparent from the Petition that the amount in controversy is met because Plaintiff did not state in the Petition that any portion of the medical expenses sought were not recoverable and because the general damages alone meet the amount in controversy requirement. Stryker requests jurisdictional discovery if the Court disagrees with its analysis.[16]

## II.    Law and Analysis

### A.  Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[17] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[18]

---

[14] R. Doc. 7-2, pp. 5-6.
[15] R. Docs. 12, 14 and 15, *and see* Plaintiff's supplemental response at R. Doc. 16.
[16] R. Doc. 15, p. 6.
[17] 28 U.S.C. § 1441(a).
[18] 28 U.S.C. § 1332(a)(1).

3

A removing defendant can meet its burden of establishing amount in controversy by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum.[19] Once a removing defendant meets its burden, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000.[20] The jurisdictional facts that support removal must be judged at the time of removal.[21] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[22]

Since the parties are of diverse citizenship, which is undisputed, the only issues with regard to the Court's exercise of diversity subject matter jurisdiction are (1) whether Stryker has articulated an adequate statutory basis for removal, and (2) whether Plaintiff's claims are likely to exceed $75,000, exclusive of interests and costs, as required by 28 U.S.C. § 1332(a).

**B. The Notice of Removal Asserts 28 U.S.C. § 1332 as the Basis for the Court's Subject Matter Jurisdiction and Complies with 28 U.S.C. § 1446**

Plaintiff argues that the Notice of Removal is defective because Stryker has not provided an applicable federal statute as the basis for removal, and alternatively, that Stryker has not complied with 28 U.S.C. § 1446(a) because the Notice of Removal fails to contain a plain statement of the grounds for removal.[23] The Notice of Removal provides:

> 3. As set forth more fully below, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the matter in controversy is likely to exceed $75,000 and is between

---

[19] *Id., and see Richard v. Georgia Gulf Lake Charles, LLC,* No. 07-0050, 2007 WL 2319804, *7 (W.D. La. Aug. 10, 2007), *citing De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1412 (5th Cir. 1995).
[20] *See, e.g., Grant v. Chevron Phillips Chemical Co.,* 309 F.3d 864, 869 (5th Cir. 2002) and *De Aguilar,* 47 F.3d at 1412.
[21] *Kimble v. America First Ins. Co.,* No. 14-67, 2014 WL 1761556, at *2 (M.D. La. Apr. 28, 2014), *citing Gebbia v. Wal-mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000) and *Womack v. National Union Fire Ins. Co.,* No. 16-13127, 2016 WL 4728096, at *1 (E.D. La. Sept. 12, 2016).
[22] *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281-282 (5th Cir. 2007).
[23] R. Doc. 7-2, p. 2.

citizens of different states. The removing defendants have also satisfied the procedural requirements for removal. This action is therefore properly removable to this Court under 28 U.S.C. § 1441.[24]

Stryker details the citizenship of the parties and addresses the amount in controversy.[25] Jurisdiction was adequately pled, as the Notice of Removal specifically alleges that the basis for the Court's subject matter jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332, the applicable federal statute.[26] The Notice of Removal also complies with 28 U.S.C. § 1446(a)'s requirement of a "short and plain statement for the grounds for removal" for the same reasons.[27]

### C. It Is Facially Apparent from the Petition that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

It is facially apparent from the Petition that Plaintiff's damages are likely to exceed $75,000, exclusive of interest and costs. The Petition alleges that Plaintiff suffered "severe chronic pain" with knee implant components that appeared to be "loose and kicked forward," over a three-year period that resulted in "a total knee arthroplasty revision" surgery described as "complex, risky, and painful."[28] While every allegation of surgery does not make the amount in controversy facially apparent, an allegation of a total knee arthroplasty revision surgery that is alleged to have

---

[24] R. Doc. 1, ¶ 3.
[25] R. Doc. 1, ¶¶ 4-15 *and see* Stryker's Opposition at R. Doc. 12, pp. 7-8.
[26] While unclear, to the extent Plaintiff argues that Stryker was required to assert a federal question in the Notice of Removal, Plaintiff is incorrect. *See* R. Doc. 7-2, p. 2. Stryker was not required to assert multiple bases for subject matter jurisdiction.
[27] Plaintiff does not assert why she believes the Notice of Removal does not contain a sufficient short and plain statement of the grounds for removal. R. Doc. 7-1, p. 2. To the extent Plaintiff is arguing that Stryker's pleadings regarding the amount in controversy are insufficient, *see, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81–82 (2014) ("As specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions. Section 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure. By borrowing Rule 8(a)'s 'short and plain statement' standard, corroborative history indicates, Congress intended to clarify that courts should 'apply the same liberal rules [to removal allegations as] to other matters of pleading.' H.R.Rep. No. 100–889, p. 71….").
[28] R. Doc. 1-1, ¶¶ 2-3, 7, 12(a).

5

been "complex, risky, and painful," is sufficient.[29] These descriptions suggest to the Court that Plaintiff's injuries are serious,[30] and federal courts will generally find that the amount in controversy is met where a surgery has occurred or where the Petition alleges serious injuries.[31]

Furthermore, Plaintiff demanded trial by jury, which indicates that Plaintiff anticipates recovering at least $50,000 in damages, and Plaintiff did not include a general allegation that her damages are below the federal jurisdictional minimum, as permitted by La. Code Civ. P. art. 893(A)(1).[32] While this Court has repeatedly held that a demand for jury trial and a lack of Article 893 allegation are insufficient alone to establish amount in controversy, they are factors to be considered.[33] Where, as here, the Petition states that Plaintiff has undergone a complex surgery related to the injury that forms the basis of the complaint, the demand for trial by jury and the lack

---

[29] Contrast *Williams v. Dargin*, No. 99-19, 1999 WL 163431, at *3 (E.D. La. March 22, 2009) (finding that amount in controversy was not facially apparent from allegation of arthroscopic knee surgery), *with Broussard v. Celebration Station Properties, Inc.,* No. 13-531, 2014 WL 1402144, at *3 (M.D. La. Apr. 10, 2014) (finding the amount in controversy was facially apparent based on the Plaintiff's allegation of a "shattered hand" and other physical injuries that resulted from a go-kart accident and which resulted in surgery, physical therapy, additional medical treatment, past and future pain and suffering and mental anguish and emotional distress).

[30] *See Broussard*, 2014 WL 1402144, at *3.

[31] *Hernandez v. CST Drilling Fluid, Inc.,* No. 08–11, 2008 WL 150962, at **2-3 (S.D. Tex. Jan. 11, 2008) (amount in controversy was met on the face of the petition based on allegations of a crushed foot and toes); *see also, Belvin v. Home Depot USA, Inc*., No. 07-1035, 2007 WL 2491428, at *2 (E.D. La. Aug. 30, 2007) (finding amount in controversy facially apparent where plaintiff alleged personal and disabling injuries to her knee, back, spine and body as a whole which required "surgical intervention and extensive physical therapy."); *Fradella v. Wal–Mart Stores, Inc*., No. 04-1230, 2004 WL 2297474, at *2 (E.D. La. Oct. 13, 2004) (denying remand and finding "Plaintiff's cases [in support of remand] are distinguishable from Defendant's cases [challenging remand] in one telling respect: in [plaintiff's cases], the plaintiffs did not undergo surgical treatment."). Even a surgical recommendation could be enough to establish the requisite amount in controversy. *See Espadron v. State Farm Mut. Auto. Ins. Co.*, No. 10-0053, 2010 WL 3168417, at *3 (E.D. La. Aug. 9, 2010).

[32] "[N]o specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish ... the lack of jurisdiction of federal courts due to insufficiency of damages ... a general allegation that the claim exceeds or is less than the requisite amount is required."

[33] R. Doc. 1-1, ¶ 30. *See Cummings v. Winn-Dixie Montgomery, LLC,* No. 15-195, 2015 WL 4772185, at *3 (M.D. La. Aug. 12, 2015), *citing Brown v. Richard,* No. 00–1982, 2000 WL 1653835, at *4 (E.D. La. Nov. 2, 2000) ("jury demand for state court can be a factor in determining whether the amount in controversy requirement for federal jurisdiction is satisfied" but alone is not controlling to satisfy the jurisdictional requirement), *and see Guidry v. Murphy Oil USA, Inc.,* No. 12-559, 2013 WL 4542433, at *6 (M.D. La. Aug. 27, 2013) ("Failure to include an allegation pursuant to article 893(A)(1) is a factor the Court must consider, but alone it is not enough to establish that the jurisdictional amount is satisfied," *citing Weber v. Stevenson,* No. 07–595, 2007 WL 4441261, at *4 (M.D. La. Dec. 14, 2007) ("the plaintiffs' failure to follow La. C.C.P. art. 893(A)(1)'s mandate, while entitled to some consideration, in and of itself is not determinative of the amount in controversy").

of a statement in the Petition that the federal jurisdictional amount is not met weigh in favor of finding that the amount in controversy is facially apparent,[34] although it is a close call.[35]

### D. Notwithstanding the Surgical Expenses, Stryker Has Established, by a Preponderance, that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

The basis for Plaintiff's Motion is that Stryker has failed to meet its burden of proof as to removal if the amount of her revision surgery is not recoverable because it was entirely paid for by Medicaid with no patient responsibility. Even assuming Plaintiff is correct, and the entire cost of the surgery is excluded from recovery, Stryker has met its burden of showing by a preponderance of the evidence that Plaintiff's damages are likely to exceed $75,000 through summary judgment-type evidence.[36] In addition to the jury demand and lack of an affirmative statement in the Petition that the federal jurisdictional amount is not met, Plaintiff's allegations of severe, chronic physical pain over a three-year period due to a faulty implant that was "loose and kicked forward"[37] are substantiated by a pre-removal medical records introduced by Plaintiff. The July 9, 2018 record indicates that, during a visit to schedule Plaintiff's knee revision surgery, Plaintiff described her left knee as "painful since surgery," and "aching" and "severe" for "years" with no alleviating factors.[38] Plaintiff's doctor's impression was "painful loose left total knee"

---

[34] *See Berry v. Toyota Motor Sales, U.S.A., Inc.*, No. 11–1611, 2011 WL 6965837, at *2 (W.D. La. Dec. 15, 2011), *report and recommendation adopted*, 2012 WL 48044 (W.D. La. Jan. 9, 2012) (amount in controversy met where plaintiff allegedly fractured jaw from hitting steering wheel in car accident; claimed laundry list of damages and made a jury demand in state court).

[35] The Court's March 6, 2020 order directing the parties to submit supplemental briefing arose because of the allegations in the Plaintiff's Motion to Remand with respect to Medicaid's payment of most of the medical expenses associated with the surgery, which called into question the sufficiency of the amount in controversy.

[36] *Luckett*, 171 F.3d at 298, *Richard*, 2007 WL 2319804, at *7, and *De Aguilar*, 47 F.3d at 1412. Stryker correctly points out that Plaintiff misstates Stryker's burden as requiring Stryker to establish the amount in controversy "to a legal certainty." R. Doc. 7-2, p. 4, *citing Saunders v. Rider*, 805 F.Supp. 17, 18 (E.D. La. Oct. 16, 1992). The law is clear that Stryker's burden is to establish the amount in controversy by a preponderance of the evidence. *Luckett* at *id. and see* R. Doc. 12, pp. 3-4.

[37] R. Doc. 1-1, ¶¶ 3, 7.

[38] R. Doc. 7-3, p. 1.

and confirms the Petition's allegation that Plaintiff's knee "look[ed] loose and kicked forward."[39] In addition to the boilerplate allegations of mental pain, permanent physical impairment, and temporary and permanent work disability, there is evidence here of specific and serious medical treatment[40] to a particular body part, which is the type of information that the Fifth Circuit has noted may support a "substantially larger monetary basis for federal jurisdiction."[41]

Notably, Stryker has also submitted federal cases involving knee replacement surgeries where courts found that the amount in controversy requirement was met. For example, in *Reeves v. Louisiana Transportation, Inc.*,[42] the plaintiff injured his neck, upper back, and right leg, and underwent a right knee replacement surgery as a result of a motor vehicle accident. Notwithstanding that the plaintiff in *Reeves* contended in his state court petition that his damages did not exceed the requisite amount for a jury trial, *i.e.,* $50,000, that court found that the defendants carried their burden of establishing that the amount in controversy requirement was met:

> [W]e find that the defendants have carried their burden of showing by a preponderance of the evidence that the amount in controversy is met. First the record shows that the plaintiff has undergone a total knee replacement to his right knee, the same limb which he alleges was injured in the accident. Second in their Notice of Removal the defendants direct our attention to three cases in which knee replacement surgeries have resulted in damage awards of well over $75,000. See e.g., *Trueman v. City of Alexandria,* 2001–1130 (La.App. 3 Cir. 5/15/02); 818 So.2d 1021. *Adams v. Department of*

---

[39] R. Doc. 7-3, p. 2.
[40] *See* R. Doc. 15, pp. 1-2 ("A total knee arthroplasty is an invasive medical procedure that "involves cutting away damaged bone and cartilage from [the patient's] thighbone, shinbone and kneecap and replacing it with an artificial joint (prosthesis) made of metal alloys, high-grade plastics and polymers." *Knee Replacement*, The Mayo Clinic, https://www.mayoclinic.org/tests-procedures/knee-replacement/about/pac- 20385276 (last visited Mar. 16, 2020). A revision surgery of a total knee arthroplasty occurs when a primary knee replacement fails, and the operation "is a longer, more complex procedure that requires extensive planning, and specialized implants and tools . . . ." *Revision Total Knee Replacement*, https://orthoinfo.aaos.org/en/treatment/revision-total-knee-replacement/ (last visited Mar. 16, 2020). The operation involves an open surgical removal and replacement of some or all of the previously implanted components, and the "recovery is typically slower than after a primary knee replacement." *Id.*).
[41] R. Doc. 1-1, ¶ 7 *and see Simon v. Wal–Mart Stores, Inc.,* 193 F.3d 848, 851 (5th Cir. 1999).
[42] R. Doc. 1, ¶ 12 and R. Doc. 12, pp. 5-6 *citing* No. 14-2379, 2014 WL 5425556 (W.D. La. Oct. 22, 2014).

> *Transp. and Development of State of La.,* 536 So.2d 476 (La.App. 1 Cir.1988); *Crooks v. National Union Fire Ins. Co.,* 620 So.2d 421 (La.App. 3 Cir.1993). Third the plaintiff's petition states that his damages do not exceed $50,000 "at this time." Doc. 1, att. 4, p. 3. We find that the phrase "at this time" indicates that the damages were under $75,000 *before* the surgery occurred.
>
> Since the defendants have met their burden, the plaintiff is required to show us to a "legal certainty" that his damages do not exceed $75,000. He has produced no evidence to show that they will not. Accordingly we find the requisite amount in controversy has been satisfied.[43]

There are even stronger reasons to find that the amount in controversy is met here. In this case, as in *Reeves*, the plaintiff underwent a knee replacement surgery, but in *Reeves* the plaintiff disclaimed that even the amount necessary for a jury trial was met. Here, Plaintiff demanded a jury trial in the Petition, which indicates that she is claiming at least $50,000 in damages.[44] Further, the state court cases cited in *Reeves* suggest that a general damages award for a future knee replacement is likely to exceed $75,000.[45]

---

[43] *Id.* at *3.
[44] R. Doc. 1-1, ¶ 30.
[45] R. Doc. 1, ¶ 12; R. Doc. 12, pp. 5-6 and p. 7, n. 38; R. Doc. 15, p. 5, n. 21. *Trueman v. City of Alexandria*, 2001–1130 (La. App. 3 Cir. 5/15/02); 818 So.2d 1021, 1026 (awarding $42,274 in medical expenses for a necessary future total knee replacement, $125,000 in general damages/future pain and suffering for the injury to the knee and past medical expenses); *Adams v. Department of Transp. and Development of State of La.,* 536 So.2d 476, 480-81 (La. App. 1 Cir. 1988) (award of $125,000 in general damages for pre-existing left knee pain aggravated by motor vehicle accident culminating in a total knee replacement); *Crooks v. National Union Fire Ins. Co,* 92-1053 (La. App. 3 Cir. 6/2/93), 620 So.2d 421, 430, *writ denied,* 629 So.2d 391 (La. 1993), and *writ denied,* 629 So.2d 392 (La. 1993) (award of $100,000 for pain and suffering for aggravation of pre-existing knee injury due to fall culminating in total knee replacement, as well as other cervical and arm injuries). *See also* R. Doc. 1, ¶ 12 and R. Doc. 12, p. 7, n. 38, *citing Lawrence v. City of Shreveport,* 41,825 (La. App. 2 Cir. 1/31/07), 948 So.2d 1179, 1188, *writ denied,* 2007-0441 (La. 4/20/07), 954 So.2d 166 (amending bench trial decision and awarding $75,000 in general damages for a knee revision surgery resulting from the plaintiff's fall into a hole, in addition to past medical expenses) *and Mack v. Wiley,* 2007-2344 (La. App. 1 Cir. 5/2/08), 991 So.2d 479, 490, *writ denied,* 2008-1181 (La. 9/19/08), 992 So.2d 932 (in addition to past medical expenses, awarding $65,000 in general damages for motor vehicle accident that aggravated pre-existing degenerative arthritic condition in elderly patient that resulted in a total knee replacement, after which the plaintiff continued to suffer pain, twice required additional treatment, underwent five months of physical therapy, and caused a 20-25% permanent disability in knee). In its supplemental brief, Stryker cites several other out-of-circuit federal district court decisions. While not controlling and procedurally distinguishable as having been fully tried to the factfinder, they are instructive as involving awards for knee revision surgeries resulting from defective implants. R. Doc. 15, p. 5, n. 21 (*see, e.g.*, *Fuesting v. Zimmer, Inc*., 421 F.3d 528 (7th Cir. 2006), *et seq.*) The only in-circuit federal case referenced is a case summary is *Newton v. Smolrarz*, No. 501-174, 2002 WL 34693103 (E.D. Tex. May 29, 2002) ($400,000 in total damages awarded, with $150,000 specifically awarded for pain and suffering). However, even though *Newton* involves a knee revision surgery due to infection following the placement of knee implants,

9

Plaintiff's authority, *Minton v. GEICO Cas. Co.,* also supports a finding that the amount in controversy is met in this case. The *Minton* plaintiff underwent a total knee replacement after aggravating a pre-existing knee injury following a motor vehicle accident. In addition to past and future medical expenses, the *Minton* court awarded $75,000 for loss of enjoyment of life, $50,000 for past pain and suffering, $75,000 for future pain and suffering, and $50,000 for disability, specifically finding that the total knee replacement constituted a permanent impairment that limited the plaintiff's ability to engage in his prior activities.[46] Plaintiff argues that, analogizing the *Minton* awards to Plaintiff's claims herein, "the award for past pain and suffering would likely be $50,000 and $10,000 for past mental anguish having [sic] to go through another procedure. The amount of $10,000 would likely cover related medical expenses where Medicare paid all other medical bills associated with the $90,000 surgery covered by Medicaid and where the amount of the write-off is unknown."[47] However, Plaintiff provides no support for this analogy, including no explanation for why Plaintiff would not also potentially receive an award for loss of enjoyment of life and her "injuries, damages, and losses in the future," which Plaintiff specifically demands in the Petition.[48] Plaintiff also ignores that she has claimed damages for past and future lost wages, benefits, and earning capacity, although neither party has provided any indication of the likely value of such claims.[49]

---

*Newton* is factually distinguishable. In that case, the plaintiff's claims were for malpractice against the medical providers and not products liability claims against the manufacturers of the implant, as is the case herein. There was also evidence that the *Newton* plaintiff was confined to a wheelchair for two years a result of the providers' negligence in not ordering removal of the knee implants, which resulted in re-occurring knee infections.

[46] *Minton v. GEICO Cas. Co.,* 2016-592 (La. App. 3 Cir. 3/8/17), 215 So.3d 290, 298, *writ denied,* 2017-0603 (La. 5/26/17), 221 So.3d 856.
[47] R. Doc. 7-2, p. 5.
[48] R. Doc. 1-1, ¶¶ 7, 25. *See, e.g., Smith v. Harrah's New Orleans Mgmt. Co.,* 213 F. App'x 353, 361 (5th Cir. 2007) (Loss-of-life-enjoyment damages can be awarded separately from other general damages, such as mental and physical pain and suffering, *citing Stevenson v. La. Patient's Comp. Fund*, 710 So.2d 1178, 1182 (La. Ct. App. 1998)).
[49] R. Doc. 1-1, ¶ 7.

Whether or not Plaintiff can recover for the medical expenses associated with her replacement surgery, the summary judgment-type evidence of Plaintiff's medical records, which corroborate her allegations of three years of pain, and the applicable case law, when considered in connection with Plaintiff's demand for a jury trial, and Plaintiff's failure to include an La. C.C. P. art. 893 statement in her Petition averring that her damages are less than $75,000,[50] satisfies Stryker's burden to prove by a preponderance of the evidence that the amount in controversy requirement is likely satisfied.

### E. Plaintiff Has Not Established to A Legal Certainty that the Amount in Controversy Is Less Than $75,000

Even if a defendant meets its burden of proof, remand is still proper if the plaintiff demonstrates that it is legally certain that her recovery will not exceed the jurisdictional amount.[51] A plaintiff can meet this burden by filing a pre-removal binding stipulation or affidavit affirmatively renouncing her right to accept a judgment in excess of $75,000.[52]

Plaintiff has submitted a post-removal declaration that states that the amount of her knee replacement surgery was paid for entirely by Medicaid and that there is no patient responsibility.[53] As explained above, even if Plaintiff's post-removal declaration is considered, and assuming the information contained in the declaration is true, Stryker has still established by a preponderance of the evidence that Plaintiff's damages are likely to exceed $75,000. Notably, Plaintiff's declaration is not an irrevocable stipulation that she will not accept $75,000 or more.[54]

---

[50] *See Cummings,* 2015 WL 4772185, at *3, *citing Brown,* 2000 WL 1653835, at *4 *and see Guidry,* 2013 WL 4542433, at *6, *citing Weber v. Stevenson,* No. 07–595, 2007 WL 4441261, at *4.
[51] *De Aguilar,* 47 F.3d at 1409.
[52] *Id.* at 1412 (*citing In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992) (*per curiam*).
[53] R. Doc. 7-8.
[54] *See, e.g., Broussard,* 2014 WL 1402144, at *5 ("The stipulation submitted by the plaintiff has little value, however, because it is not binding. The only way the plaintiff's stipulation would be binding 'is if, within that stipulation, [she] expressly renounced [her] right to recover in excess of $75,000.00' in state court. *McGlynn,* 693 F.Supp.2d at 593 (plaintiff's stipulation was not binding because it failed to 'provide that he will not accept more than [$75,000] in the event he is awarded that amount in state court'); *see also Printworks, Inc. v. Dorn Co., Inc.,* 869 F.Supp. 436, 440

### III.  Conclusion and Recommendation

Under either the 'facially apparent' or 'preponderance of the evidence' standard, and regardless of whether the costs associated with the knee replacement surgery are recoverable, Stryker has established that Plaintiff's damages are likely to exceed $75,000 in this case.  At that point, the burden shifts to Plaintiff to establish to a legal certainty that the amount in controversy is not met, which Plaintiff has not done.  Accordingly, Plaintiff's Motion to Remand should be denied.  Since denial of remand is recommended, Stryker's request for jurisdictional discovery,[55] and Plaintiff's request for attorney's fees pursuant to 28 U.S.C. § 1447(c), should be denied as moot.[56]

**IT IS RECOMMENDED** that the Motion to Remand, filed by Plaintiff Dina Batiste, be **DENIED**.  **IT IS FURTHER RECOMMENDED** that Stryker's request for jurisdictional discovery and Plaintiff's request for costs and fees pursuant to 28 U.S.C. § 1447(c) be **DENIED AS MOOT.**

In the event this recommendation is adopted, this matter should be referred for a scheduling conference.

Signed in Baton Rouge, Louisiana on April 22, 2020.

_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

(E.D. La. 1994) (stipulations which 'fall short of stipulating that the claimant will not seek more than the jurisdictional amount' are not binding). This is because a Louisiana state court can award all damages to which it feels a plaintiff is entitled, regardless of what is pled in the petition. *See* La. C. Civ. P. art. 862 ('a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings'). Here, the plaintiff's stipulation is post-removal and does not bind her from accepting more than $75,000 in recovery.
[55] R. Doc. 15, p. 6.
[56] *See* R. Doc. 7-2, pp. 5-6; R. Doc. 16, p. 4 and 28 U.S.C. § 1447(c) (providing, *inter alia*, that an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.)