UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DINA BATISTE                                    CIVIL ACTION

v.

STRYKER CORPORATION, ET AL.              NO.:  3:19-CV-00574-JWD-EWD

RULING AND ORDER

Before the Court is *Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim* brought by defendants Stryker Corporation ("Stryker") and Stryker Sales Corporation ("Stryker Sales") (collectively, "Defendants"). (Doc. 8.) It is opposed by plaintiff Dina Batiste ("Plaintiff" or "Batiste"). (Doc. 11.) Defendants filed a reply brief in support of their motion. (Doc. 13.) The Court has considered the facts, the arguments made by the parties, the law, and for the reasons which follow, the motion is granted, and Batiste is given twenty-eight (28) days within which to file an amended complaint.

## I.   *PLAINTIFF'S PETITION*

Plaintiff Dina Batiste filed suit against Stryker and Stryker Sales in the Nineteenth Judicial District Court, Parish of East Baton Rouge, Louisiana, on July 18, 2019. (Doc. 1-1 at 11-16.) The case was removed to this Court on August 29, 2019. (Doc. 1.)

In her *Petition for Personal Injuries and Damages* ("*Petition*"), Batiste alleges that, on November 12, 2015, "she underwent a total knee arthroplasty at Ocshner Medical Center in New Orleans." (*Pet.* ¶ 2, Doc. 1-1 at 11.) The knee implant was a Stryker Triathlon Total Knee System ("Total Knee"). (*Id.*) Plaintiff alleges that "following the 2015 surgery and through 2018", she "suffered severe chronic pain and joint instability and limitations." (*Id.* ¶ 3, at 11-12.)

Plaintiff claims that "[d]iagnostic testing revealed the knee components appeared to be loose and kicked forward" and a "second total knee replacement of the left knee was performed on July 14, 2018." (*Id*. ¶ 3, at 12.) As a result, she contends that she suffered various personal injuries and damages. (*Id*. ¶¶ 7, 9, at 12-13.)

Plaintiff alleges that Stryker and/or Stryker Sales "designed, manufactured, promoted, distributed, marketed and sold the dangerous metal knee prosthetic implant that injured" plaintiff ("Total Knee"). (*Id*. ¶ 3; *see also id*. ¶¶ 6, 12.) The Petition states that the Total Knee "was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce" by Defendants. (*Id*. ¶ 12, at 13.) She describes the dangerous conditions of the Total Knee by alleging it contained manufacturing defects (although she does not name those) (*id*. ¶12(a)); contained unnamed design defects which "subject[ed] Plaintiff and others to risks, including the risk that the knee joint would prematurely fail and require[e] a complex, risky and painful surgery to remove and replace" it (*id*. ¶ 12(b)); underwent insufficient testing (*id*. ¶ 12(c)); and, failed to have "adequate instructions and/or warnings to fully inform Plaintiff of the full nature and extent of the risks associated with its use" (*id*. ¶ 12(d)).

In the *Petition*, Plaintiff also alleges that Defendants were malicious, reckless and/or negligent (*id*. ¶¶ 13, 18, 19, 20, 21, at 13-15), and breached both express warranties (*id.* ¶¶ 26, 27, 28, at 15) and implied warranties (*id.* ¶¶ 22, 23, 25, 28).

## II.    *PARTIES' ARGUMENTS*

### A.  **Defendants' Motion to Dismiss**

In their Motion to Dismiss, Defendants argue that, although Plaintiff does not express it as such, she has filed a claim under the Louisiana Products Liability Act, La. Rev. Stat. Ann. § 9:2800.51 *et seq*. ("LPLA") and has also made non-LPLA claims. (Doc. 8-1 at 1.) As to the non-

LPLA claims, because Louisiana law makes the LPLA the exclusive remedy for such claims, her non-LPLA claims must be dismissed, including the claims for "negligence, fraud by misrepresentation, breach of implied warranty and redhibition." (*Id*. at 8-9 (citing La. R.S. 9:2800.52) and *Stahl v. Novartis Pharm. Corp*. 283 F.3d 254, 261 (5th Cir. 2002).)

As to the LPLA claims, Defendant maintains that Plaintiff's claims fail to state a facially plausible claim to relief as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) because the Petition fails "to provide facts identifying the characteristic[s] of the product which rendered it 'unreasonably dangerous' and thereby defective." (*Id*. at 3.) As to her claim of defective construction or composition, Plaintiff is required "to (i) set forth the manufacturer's specifications for the product and (ii) demonstrate how the manufacturer materially deviated from those standards so as to render it unreasonably dangerous." (*Id*. at 4 (quoting *Roman v. W. Mfg. Inc*., 691 F.3d 686, 698 (5th Cir. 2012)).) Plaintiff's allegations that the Total Knee "contained manufacturing defects…causing the knee joint to prematurely fail…" is, argue Defendants, insufficient because Plaintiff fails "to offer any facts explaining how the device…deviated from any manufacturing specifications or standards." (*Id*.) Rather, Plaintiff merely recites "conclusory allegations", which is insufficient. (*Id*.)

Plaintiff's allegation of defective design likewise fails, insist Defendants, for the same reason. Plaintiff has not particularized facts establishing that there existed an alternative design for the product which would have prevented her damages, nor has she alleged that the burden of manufacturing such a device would outweigh the dangers of the present design. (*Id*. at 5.) Similarly, Defendants allege that Plaintiff's allegations of inadequate warnings fail due to her failure to recognize the "learned intermediary" doctrine adopted in Louisiana (*id*. at 6 (citing *Stahl*, 283 F.3d at 264)) and her failure to specify what risks were not disclosed to her doctor,

and because she "wholly fail[s] to articulate a causal connection between the alleged inadequate warning and her claimed damages," (*id*.).

As to Plaintiff's allegation of breach of express warranty, Defendant acknowledge Plaintiff's allegation that Defendants falsely warranted that the product was "safe, effective, fit and proper for its intended use." (*Id*. at 7 (citing *Pet.* ¶ 26, Doc. 1-1 at 15).) However, Plaintiff fails "to articulate how the referenced marketing statements are false" (*id*.) and how the information supposedly possessed by Defendants rendered the product unsafe and unfit for use (*id*. at 7-8).

### B.  Plaintiff's Opposition

In her opposition, Plaintiff responds by arguing that "the medical product came apart after being implanted" after "a mere three years" and "obviously, the component parts could not properly preform [sic] once they came apart and separated shortly after being [sic] the implant operation." (Doc. 11 at 2.) "Stryker cannot possible [sic] contend that it designed the knee implant so that the components parts would come apart and dissociate after implantation intended to require successive operations." (*Id*. at 3.)

As to the design defect allegation, Plaintiff points the Court to an FDA recall of the Triathlon Modular handle "because analysis revealed that the press fit specifications between the dowel pin and the mating hole in the shaft were not being achieved potentially resulting in disassociation from the instrument." (*Id*.) In addition, according to Plaintiff, "Stryker informed the FDA [that] 'the peel strength of the inner blister may have been below internal validated requirements….'" (*Id*.)

Plaintiff urges that "[a]n alternative design would have promoted the inherent purpose of the knee implant" although she does not specify, even in a general way, the characteristics of the

alternative design or how it would promote that purpose. (*Id.*) Similarly, Plaintiff argues that the likelihood that their product would require a surgery to remove and replace it would outweigh the burden on Defendants of developing an alternative design. (*Id.* at 4.)

More fundamentally, Plaintiff argues that "while the holdings of <u>Twombly</u> and <u>Iqbal</u> are absolutely applicable, this is a complex medical device case in which almost all of the evidence is in Stryker's possession. If more technical allegations are necessary regarding exactly why the implant fell apart after being implanted, [Plaintiff] would benefit from discovery and/or expert analysis." (*Id.* (citing *Winslow v. W.L. Gore & Assoc., Inc*., No 10-116, 2011 WL 866184 (W.D. La. Jan. 21, 2011), *report and recommendation adopted as modified sub nom. Winslow v. W.L. Gore & Assoc., Inc*., No. 10-116, 2011 WL 873562 (W.D. La. Mar. 11, 2011)).) Plaintiff makes a similar argument regarding her failure to warn claim, complaining that "[t]here has been no discovery to show that Stryker provided any warnings that the component parts of [the] implant would likely come apart shortly after being implanted." (*Id.* at 5.)

As to Plaintiff's redhibition claim, Plaintiff argues that "Louisiana's courts have interpreted the LPLA as preserving redhibition as a cause of action to the extent that the plaintiff seeks recovery of economic losses." (*Id.* at 5 (citing *Boutte v. Stryker Biotech*, LLC, 67 F. Supp. 3d 732, 739-41 (M.D. La. 2014) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002); *Harris v. Merck & Co., Inc*., et al., No. 12-1446, 2012 WL 5384720 (W.D. Nov. 1, 2012; *Nelson v. Mylan Pharm., Inc.*, No. 10-0592, 2010 WL 3339274 (W.D. La. Aug. 3, 2010), *report and recommendation adopted by N*o. 10-0591, 2010 WL 3363039 (W.D. La. Aug. 24, 2010))).)

Finally, in the alternative event that the Court finds her Petition lacking, Plaintiff urges the Court to allow her to amend and supplement her Petition. (*Id.* at 5-6.)

### C.  Defendants' Reply

In their Reply Memorandum, Defendants emphasize that the phrase "fell apart" used in Plaintiff's opposition does not appear in the *Petition*. (Doc. 13 at 1.) Rather, the Petition states that the implant's components "appeared to be loose." (*Id*. at 1-2 (citing *Pet*. ¶ 3, Doc. 1-1 at 12).) But, argue Defendants, "a loose prosthesis is not a defective prosthesis" and Plaintiff's allegations fail to specify how the implant is defective. (*Id*. at 2.)

Further, Plaintiff's response fails to point to any *facts* supporting her conclusory allegations. (*Id*.) Rather, as to the charge of inadequate warning, Plaintiff "offers no allegations suggesting what information, not otherwise known to the surgeon, should have been warned of." (*Id*.)  Similarly, as to design, "she fails to identify an alternative design that could have prevented her injury." (*Id*.)

Regarding the FDA recall referred to by Plaintiff, this is "not referenced anywhere in the Petition" and, in any event, "these documents bear no relation to Plaintiff's Petition." (*Id*. at 3.) The Modular Handle referred to in the FDA recall notice is "an optional surgical instrument used to aid in stabilization" during certain parts of the surgery and Plaintiff has not alleged any facts that would connect the recall to the "loose" prosthesis mentioned in the *Petition*. (*Id*. (emphasis omitted).)

In response to Plaintiff's arguments regarding redhibition, Defendants do not disagree with or attempt to distinguish the cases cited by Plaintiff which allow redhibition to be pled in the context of an LPLA suit. However, Defendants insist that Plaintiff has alleged no facts to support such a claim. (*Id*. at 4.) Finally, Defendants urge the Court to deny Plaintiff permission to amend her Petition because same would be futile and the ensuing discovery both arduous and non-productive. (*Id*. at 4-5.)

### III.    STANDARD – MOTION TO DISMISS

In *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346 (2014), the Supreme

Court explained: "Federal pleading rules call for 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance

dismissal of a complaint for imperfect statement of the legal theory supporting the claim

asserted." *Johnson*, 574 U.S. at 11, 135 S. Ct. at 346–47 (citations omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has

explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true)
> (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant
> evidence of each element of a claim. "Asking for [such] plausible grounds to infer
> [the element of a claim] *does not impose a probability requirement* at the pleading
> stage; it simply calls for enough fact to raise a reasonable expectation that discovery
> will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions,
> factual allegations remain so entitled. Once those factual allegations are identified,
> drawing on the court's judicial experience and common sense, the analysis is
> whether those facts, which need not be detailed or specific, allow "the court to draw
> the reasonable inference that the defendant is liable for the misconduct alleged."
> [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*,
> 55[0] U.S. at 556. This analysis is not substantively different from that set forth in
> *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery
> must be undertaken in order to raise relevant information to support an element of
> the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2),
> remains that the defendant be given adequate notice of the claim and the grounds
> upon which it is based. The standard is met by the "reasonable inference" the court
> must make that, with or without discovery, the facts set forth a plausible claim for
> relief under a particular theory of law provided that there is a "reasonable
> expectation" that "discovery will reveal relevant evidence of each element of the
> claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

7

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed

in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03

(5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be successful,

but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

IV.    *ANALYSIS*

A.  **The LPLA Generally**

"The manufacturer of a product shall be liable to a claimant for damage proximately

caused by a characteristic of the product that renders the product unreasonably dangerous when

such damage arose from a reasonably anticipated use of the product by the claimant or another

person or entity." La. Rev. Stat. Ann. § 9:2800.54(A). Thus, as the Fifth Circuit has explained:

> To maintain a successful products liability action under the LPLA, a plaintiff must
> establish four elements: (1) that the defendant is a manufacturer of the product; (2)
> that the claimant's damage was proximately caused by a characteristic of the
> product; (3) that this characteristic made the product "unreasonably dangerous";
> and (4) that the claimant's damage arose from a reasonably anticipated use of the
> product by the claimant or someone else.

*Stahl*, 283 F.3d at 254, 260–61 (5th Cir. 2002) (citing La. Rev. Stat. Ann. § 9:2800.54(A)).

A product is "unreasonably dangerous" under the LPLA "if and only if" the product is (1)

"unreasonably dangerous in construction or composition"; (2) "unreasonably dangerous in

design"; (3) "unreasonably dangerous because an adequate warning about the product has not

been provided"; and (4) the product fails to "conform to an express warranty of the manufacturer

about the product." La. Rev. Stat. Ann. § 2800.54(B) (citing La. Rev. Stat. Ann §§ 9:2800.55 –

58).

8

**B.  Construction/Composition**

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. Ann. § 9:2800.55.

Plaintiff alleges that Defendants "designed, manufactured, promoted, distributed, marketed and sold the dangerous metal knee prosthetic implant that injured plaintiff." (*Pet.* ¶ 3, Doc. 1-1 at 11-12; *see also* ¶¶ 6, 12 at 12-13.) The *Petition* states that the Total Knee "was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce" by Defendants. (*Id.* ¶ 12 at 13.) She alleges that the Total Knee contained manufacturing defects, but she does not specify what those are. (*Id.* ¶12(a).) In her opposition memorandum Plaintiff argues that the device "fell apart" but, as Defendants correctly point out, these words are not used in the *Petition*. Rather, Plaintiff alleges that "[d]iagnostic testing revealed the knee components appeared to be loose and kicked forward" and a "second total knee replacement of the left knee was performed on July 14, 2018." (*Id.* ¶ 3 at 12.)

Plaintiff's allegations are simply insufficient since, as the Defendants correctly point out, a loose prosthesis is not necessarily a defective one. Furthermore, the fact that Plaintiff suffered a bad outcome and was injured does not necessarily imply a defectively manufactured product. Nor does the *Petition* state that the loose prosthesis necessitated the replacement surgery, merely alleging that the second surgery occurred some three years after the initial one. (*Id.*)

The Court is sympathetic to Plaintiff's argument that Defendants are likely to be in exclusive control of the product's "specifications or performance standards" necessary to identify with particularity deviations therefrom and that discovery may well be the only

mechanism by which to obtain same. *See Morel v. Pinnacle Entm't, Inc.,* No. 16-627, 2017 WL 3719975 at *4-5 (M.D. La. May 19, 2017) (discussing *Bertrand v. Eli Lilly & Co.*, No. 12-0853, 2013 WL 12184299 (W.D. La. Mar. 13, 2013)); *see also Baudin v. AstraZeneca Pharm. LP*, 413 F. Supp. 3d 498, 506-07 (M.D. La. 2019). As the Court held in *Bertrand*, requiring a complaint to contain allegations of specific specifications violated when those specifications are in the sole possession of the defendant would make such a case "essentially impossible to bring in federal court. Clearly, that was not the intent of *Iqbal* or *Twombly*." *Bertrand*, 2013 WL 12184299, at *7-8; *accord Morel*, 2017 WL 3719975, at *6.

In *Morel*, this Court also held it is not necessary for the complaint to provide a detailed technical description of deviations from the product's performance standards and specifications to be sufficient for Rule 12(b)(6) purposes as long as the complaint's description of the product failure is such that "the Court's experience and common sense" can lead the Court to the conclusion that "discovery could be reasonably expected to reveal relevant information as to plaintiff['s] claim[ ] for construction or composition defect under the LPLA." *Morel*, 2017 WL 3719975, at *5 (quoting *Bertrand*, 2013 WL 12184299, at *5.)[1]

But Plaintiff's allegations here do not rise even to this minimum level. For this reason, the Court finds that Plaintiff has not stated a construction/composition claim under the LPLA, and Defendants' motion on this issue is granted.

---

[1] In *Morel*, the plaintiff alleged she was injured when she was thrown from a chair manufactured by the defendant. She alleged that "[t]he chair is manufactured to swivel back to the front after the person seated gets out of the chair." *Morel*, 2017 WL 3719975, at *1, *4. The "chair did not swivel back to the front when she got out of the chair but instead, when she went to sit back down in the chair, it rapidly and violently swung forward, throwing [her] to the floor, causing [her] to suffer a broken pelvis and back pain." *Id.* The Court found that, although a "close call," these allegations sufficiently pled an LPLA claim for defective construction and composition. *Id.* at *5.

### C. Defective Design

A plaintiff proves a defective design claim by showing that, at the time the product left its manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

La. Rev. Stat. Ann. § 9:2800.56.

Like Plaintiff's allegations regarding construction and composition, Plaintiff fails to describe, even in general terms, what design defects existed at the time of the events sued on. Further, she provides nothing, not even general characteristics, regarding alternative designs nor does she attempt any weighing of the gravity of harm caused by its design against the burden on the manufacturer to adopt an alternative design. While Plaintiff urges in briefing that "[a]n alternative design would have promoted the inherent purpose of the knee implant," she does not specify the alternative design or how it would promote that purpose. (Doc. 11 at 3.) Similarly, Plaintiff argues that the likelihood that their product would require a surgery to remove and replace it outweighs the burden of developing an alternative design (*id*. at 4) but, aside from this bare assertion in briefing, no support or analysis is provided.

> The occurrence of an injury does not give rise to the presumption that the design was unreasonably dangerous. A conclusory allegation that an alternate design exists will not suffice, but the plaintiff need not allege in detail "that the product's design would cause the claimant's damage," that "the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design," and "the adverse effect, if any, of such alternative design on the utility of the product."

*Baudin,* 413 F. Supp. 3d at 504 (citing *Kennedy v. Pfizer, Inc.,* No. 12-01858, 2013 WL 4590331, at *3 (W.D. La. Aug. 28, 2013) and quoting *Becnel v. Mercedes-Benz USA, LLC,* No. 14-0003, 2014 WL 4450431, at *4 (E.D. La. Sept. 10, 2014)).

While "[t]his Court has found that a complaint sufficiently pleads a design defect claim by alleging an alternative design in general terms, including the general characteristics of the alternative design . . . , this Court has found a failure to state a claim of defective design when there are no allegations of alternative design or of any weighing of the likelihood and gravity of damages against the burden of adopting alternative designs." *Baudin*, 413 F. Supp. at 506 (citations omitted).

Plaintiff's allegations regarding design are conclusory at best. Plaintiff's references to the FDA recalls do nothing to further her position since these are not in the *Petition* and, in addition, are not tied in any way to Plaintiff's operation or the damages she suffered. Accordingly, the Court finds that Plaintiff has not stated a defective design claim under the LPLA and grants Defendants' motion on this issue.

### D.  Inadequate Warning

To prove that an adequate warning was not given, Plaintiff must show that, "at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. Rev. Stat. Ann. § 9:2800.57(A). With this theory, there are certain circumstances where a manufacturer is not required to provide an adequate warning. La. Rev. Stat. Ann. § 9:2800.57(B). Further, a manufacturer can become liable under this theory after the product leaves his control if he "acquires knowledge of a characteristic of the product that may cause damage and the danger of

such characteristic, or . . . would have acquired such knowledge had he acted as a reasonably prudent manufacturer," and he "subsequent[ly] fail[s] to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. Rev. Stat. Ann. § 9:2800.57(C). "Importantly, such a claim requires the plaintiff to show both: (1) the inadequacy of the warning provided *and* (2) that the inadequate warning was the cause of his injuries." *Brocato v. DePuy Orthopaedics*, 2015 WL 854150, at *6 (E.D. La. Feb. 25, 2015) (Shushan, M.J.).

In her *Petition*, Plaintiff alleges that Defendants failed to have "adequate instructions and/or warnings to fully inform Plaintiff of the full nature and extent of the risks associated with its use" (*Pet.* ¶ 12(d), Doc. 1-1 at 13.) Defendants allege that Plaintiff's allegations of inadequate warnings are insufficient due to her failure to articulate Defendants' alleged  failure to warn in the context of the "learned intermediary" doctrine adopted in Louisiana (Doc. 8-1 at 6 (citing *Stahl*, 283 F.3d at 264).) since she fails to specify what risks were not disclosed to her doctor and "wholly fail[s] to articulate a causal connection between the alleged inadequate warning and her claimed damages." (*Id.*) In her opposition, Plaintiff responds to these arguments with a single sentence: "There has been no discovery to show that Stryker provided any warnings the component parts of implant [sic] would likely come apart shortly after being implanted." (Doc 11 at 5.)

Again, Plaintiff's allegation of inadequate warning falls short of the required pleading standard. While Plaintiff suggests in briefing that the warning should have stated that "the component parts of [the] implant would likely come apart shortly after being implanted," (*id.*) this is not stated in the *Petition*. In briefing, Plaintiff fails to address at all Defendants' arguments that the *Petition* does not allege that the inadequate warning was the cause of Plaintiffs' injuries

or that the risks associated with the product's use were not conveyed to Plaintiff's doctors under the learned intermediary doctrine.[2]

"The 'learned intermediary doctrine' is an affirmative defense under which the Defendants bear the burden of establishing that they adequately informed the intermediate physician of the risks associated with the use of their product." *Brocato*, 2015 WL 854150, at *6. While used most often in connection with drug product liability cases, it has been applied in medical products liability cases. *See, e.g.*, *Lewis v. Baxter Int'l, Inc.*, No. 16-16391, 2017 WL 661324, at *4 (E.D. La. Feb. 17, 2017). While an affirmative defense, it also has implications for a plaintiff's pleading requirements.

> To allege a failure-to-warn claim upon which relief can be granted under the LPLA, Plaintiff is not required to detail what an adequate warning would be and how an adequate warning would have caused Plaintiff's treating physician to act differently. Plaintiff is merely required to allege that Defendants did not adequately warn Plaintiff's treating physician and that the inadequate warning constituted the proximate warning [or cause] of Plaintiff's injuries.

*Baudin*, 413 F. Supp. 3d at 510 (quoting *Jenkins v. Bristol-Myers Squibb*, No. 14-2499, 2015 WL 5012130, at *5 (E.D. La. Aug. 21, 2015)).[3] *See also Lewis*, 2017 WL 661324, at *5 ("Plaintiff is not required to detail what an adequate warning would be and how an adequate warning would have caused Plaintiff's treating physician to act differently. However, Plaintiff is required to allege that Defendants did not adequately warn Plaintiff's treating physician of risks associated

---

[2] Plaintiff seems to concede the validity of Defendants' argument on this issue, as Plaintiff has failed to respond to Defendants' argument on this point and thus the Court is entitled to conclude that that Plaintiff has waived any opposition. *See JMCB, LLC v. Bd. of Commerce and Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) ("Plaintiff did not respond to the substance of any of SPL's arguments…. On this ground alone, the Court could dismiss Plaintiff's Amended Complaint." (citations omitted)); *see also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia*, *JMCB*, 336 F. Supp. 3d at 634)).

[3] In *Jenkins*, 2015 WL 5012130, at *5, the Court specifically rejected the defendant's argument that a plaintiff' must provide sufficient factual allegations as to why the information provided to the intermediary was inadequate, what information should have been provided, and how that information would have caused the intermediary to act differently which would have prevented the plaintiff's injury.

with the product that are not otherwise known to the patient or physician, and that the inadequate

warning constituted the proximate cause of the Plaintiff's injuries.").

Here, Plaintiff has failed to allege that Defendants failed to warn Plaintiff's treating

physicians and that this failure was a proximate cause of her injuries. The Court finds that

Plaintiff has not adequately pled her inadequate warning claim and, therefore, this part of

Defendants' motion is granted.

### E.  Breach of Express Warranty

To state a viable claim that a product is "unreasonably dangerous because of

nonconformity to express warranty," a plaintiff must demonstrate that (1) an express warranty

existed, (2) he or she was induced to purchase the product due to the warranty, and (3) his or her

damage was proximately caused because the express warranty was untrue. La. Rev. Stat. Ann. §

9:2800.58.

In her *Petition*, Plaintiff alleges that "Defendants expressly warranted to Plaintiff and

Plaintiff's physician, by and through statements made by Defendants or their authorized agents

or sales representatives, orally and in publications, package inserts or other written materials

intended for physicians, medical patients and the general public, that the [Total Knee] was safe,

effective, fit, and proper for its intended use." (*Pet.* ¶ 26, Doc. 1-1 at 15.) However, "[s]aid

warranties and representations were false in that the aforementioned [Total Knee] was not safe

and was unfit for the uses for which it was intended." (*Id.* ¶ 28.)

Defendant argues that Plaintiff's allegation is insufficient in that it fails to "articulate how

the referenced marketing statements are false" (Doc. 8-1 at 7) and how the information

supposedly possessed by Defendants rendered the product unsafe and unfit for use. (*Id.* at 7-8.)

Plaintiff fails to address these arguments.[4] The Court agrees with Defendants that Plaintiff's allegation regarding breach of express warranty is insufficient. Plaintiff fails to identify, even in a general way, the defects in the product which make it unsafe and unreasonably dangerous and therefore fails to identify how Defendants' representations were untrue. Furthermore, like Plaintiff's allegation of failure to warn, her allegation regarding breach of express warranty fails to allege that her "damage was proximately caused because the express warranty was untrue." La. Rev. Stat. Ann. § 9:2800.58. Therefore, the Court finds that Plaintiff has failed to adequately allege breach of express warranty and grants this part of Defendants' motion.

### F. Fraudulent, Willful, Wanton, Malicious, Reckless and Negligent Conduct and Breach of Implied Warranty

Plaintiff alleges that Defendants' conduct was fraudulent, willful, wanton, malicious, reckless and negligent. (*Pet.* ¶¶ 13, 18, 19, 20, 21, Doc. 1-1 at 13-15) and that it also constituted a breach of implied warranty (*id*. ¶¶ 22, 23, 25, 28, at 15.) Defendants argue that these non-LPLA claims must be dismissed because Louisiana law makes the LPLA the exclusive remedy for such injury claims. (Doc. 8-1 at 8-9 (citing La. Rev. Stat. Ann. § 9:2800.52, *and Stahl,* 283 F.3d at 261 (5th Cir. 2002)).) Plaintiff fails to address this argument.[5]

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in" the LPLA. La. Rev. Stat. Ann. § 9:2800.52. "[F]or causes of action arising after the effective date of the LPLA, negligence, strict liability, and breach of express warranty are not available as theories of

---

[4] Because Plaintiff has failed to address these arguments, the Court is entitled to consider opposition to them waived. *See JMCB,* 336 F. Supp. 3d at 634, *and Apollo Energy, LLC,* 387 F. Supp. 3d at 672.
[5] Because Plaintiff has failed to address this argument, the Court is entitled to consider opposition to it waived. *See JMCB,* 336 F. Supp. 3d at 634, *and Apollo Energy,* 387 F. Supp. 3d at 672.

recovery against a manufacturer, independent from the LPLA" *Stahl,* 283 F.3d at 261 (5th Cir. 2002) (citing *Jefferson v. Lead Indus. Assoc.*, 930 F. Supp. 241, 245 (E.D. La. 1996)). Thus, to the extent Plaintiff's suit makes claims for negligence, fraud and willful, wanton, malicious, reckless conduct and breach of implied warranty, these claims are barred by the LPLA's exclusivity provision. *See, e.g., Cooper v. Wyeth, Inc.*, No. 09-929, 2010 WL 2653321, at *2 (M.D. La. June 25, 2010) ("The Court finds that these claims [including a claim for negligence] do not fall into one of the four categories recognized by the LPLA, and thus, the Court dismisses these claims pursuant to Rule 12(b)(6) because they do not state a cognizable action under Louisiana law."). Accordingly, this part of Defendants' motion is granted.

### G. Rehibition

Under Louisiana's Civil Code, a buyer has a warranty "against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code art. 2520. Such a defect gives a buyer the right to obtain rescission of the sale, or, if the buyer would have still bought the product but for a lesser price, a reduction of the purchase price. *Id*. If a seller is in "bad faith," a buyer can also recover damages and attorneys' fees. La. Civ. Code art. 2545. The Louisiana Civil Code makes clear that recovery under a theory of redhibition is limited to purely economic loss and not recovery for personal injury. *Baudin*, 413 F. Supp. 3d at 512-13.

Defendants argue that Plaintiff's redhibition claim, like her other non-LPLA claims, should be dismissed since LPLA is her exclusive remedy. (Doc. 8-1 at 1.) Plaintiff responds that "Louisiana's courts have interpreted the LPLA as preserving redhibition as a cause of action to the extent that the plaintiff seeks recovery of economic losses" (Doc. 11 at 5 (citing *Boutte v.*

17

*Stryker Biotech*, *LLC*, 67 F. Supp. 3d 732, 739-41 (M.D. La. 2014) (citing *Pipitone v. Biomatrix*, 288 F.3d 239, 251 (5th Cir. 2002); *Harris v. Merck & Co.,* No. 12-1446, 2012 WL 5384720 (W. D. Nov. 1, 2012); *Nelson v. Mylan Pharm., Inc.*, No. 10-0592, 2010 WL 3339274 (W.D. La. Aug. 3, 2010), *report and recommendation adopted by*, No. 10-0591, 2010 WL 3363039 (W.D. La. Aug. 24, 2010)).)  While Defendants, in their reply, do not disagree with or attempt to distinguish the cases cited by Plaintiff, they insist that Plaintiff has alleged no facts to support such a claim. (Doc. 13. at 4.)

This issue was considered in *Harris v. Merck & Co.* There the Court stated:

> [T]he LPLA allows for a redhibition claim only to the extent that plaintiff seeks recovery of economic losses. Merck asserts that plaintiff's redhibition claim must fail because plaintiff's complaint fails, as argued above, to state a claim for defect. Having already deemed plaintiff's complaint sufficient as stating a claim for design defect under the LPLA, we also reject this argument relating to redhibition and find that plaintiff's redhibition claim should be preserved for further proceedings. Accordingly, Merck's motion will be denied in this respect.

*Harris*, 2012 WL 5384720, at *6; *accord Baudin*, 413 F. Supp. 3d at 514.

But here, unlike in *Harris* and *Baudin*, Plaintiff has failed to state a claim for a defect under the LPLA and therefore, her redhibition claim also fails. Defendants' motion on this issue is granted.

## V.   *AMENDMENT*

Plaintiff asks the Court, in the alternative, to allow her to amend her Petition and state a cause of action under the LPLA. (Doc. 11 at 5-6.) Defendants urge the Court to deny Plaintiff permission to amend because same would be futile and ensuing the discovery would be both arduous and non-productive. (Doc. 13 at 4-5.)

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1357 (3d ed. 2016).

Based on the above authority, the Court will act in accordance with "wise judicial practice" and grant Plaintiff twenty-eight (28) days in which to amend her Petition to cure the above deficiencies. Failure to do so will result in the dismissal of her claims with prejudice.

**VI.    *CONCLUSION***

For the foregoing reasons, De*fendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim* (Doc. 8) is **GRANTED**, and Plaintiff Dina Batiste's claims are **DISMISSED WITHOUT PREJUDICE.**  Plaintiff shall have twenty-eight (28) days in which to amend the operative complaint to cure the above deficiencies.  Failure to do so will result in the dismissal of her claims with prejudice.

Signed in Baton Rouge, Louisiana, on June 24, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**