UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DINA BATISTE** | **CIVIL ACTION** |
| **VERSUS** | |
| **STRYKER CORPORATION, ET AL** | **NO. 19-CV-574-JWD-EWD** |

### RULING ON DEFENDANT'S MOTION TO DISMISS

Before the Court is *Defendants' Second Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim* (Doc. 25) ("*Motion*") brought by defendants Stryker Corporation ("Stryker") and Stryker Sales Corporation ("Stryker Sales") (collectively "Defendants"). It is opposed. (Doc. 29.) No reply brief was filed. The Court has carefully considered the law, the facts alleged in the *Amended Complaint for Personal Injuries and Damages* (Doc. 24) ("*Amended Complaint*") and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted in part and denied in part.

I.     **PROCEDURAL BACKGROUND**

This is a medical products liability suit originally brought by plaintiff Dina Batiste ("Plaintiff" or "Batiste") in the Nineteenth Judicial District Court, Parish of East Baton Rouge, on July 18, 2019. (Doc. 1-1 at 11–16.) Defendants removed the case to this Court on August 29, 2019. (Doc. 1.) Defendants moved to dismiss Plaintiff's petition (Doc. 8), which was opposed by Plaintiff (Doc. 11). Defendants filed a reply brief. (Doc. 13.) The Court granted Defendants' motion to dismiss, dismissing without prejudice Plaintiff's petition and giving Plaintiff twenty-eight (28) days to file an amended complaint to cure the deficiencies forming the basis of the Court's ruling. (Doc. 22, *Batiste v. Stryker Corp.*, No. 19-574, 2020 WL 3451690 (M.D. La. June 24, 2010).) Plaintiff filed her *Amended Complaint* on July 21, 2020 (Doc. 24), and Defendants

1

filed the present *Motion* on August 11, 2020. (Doc. 25). Plaintiff filed her opposition on August 20, 2020 (Doc. 29), and no reply was filed.

## II. PLAINTIFF'S AMENDED COMPLAINT

Generally, Plaintiff alleges that severe arthritis in her knees became so painful and debilitating that she sought medical treatment from Dr. Pamela Petrocy at Ocshner Medical Center in New Orleans, La. (Doc. 24 at 1–2, ¶¶ 3–8.) On November 12, 2015, Dr. Petrocy performed a "total knee arthroplasty" on Plaintiff's left knee using a "Stryker Triathlon Total Knee System, size 6 PS femur, size 6 tibia tray, size 9 mm poly, size 39 mm patella," all manufactured by "Stryker Corporation and/or Stryker Sales Corporation." (*Id*. at 2–3, ¶ 8.) "After . . . the surgery," Plaintiff "suffered severe chronic pain and joint instability and limitations" including not being able to walk on the affected leg, having to use a cane for support, having to lift her left leg with her hands in order to get into a car, having her left knee become "stuck and lock up" and having to build a ramp for access. (*Id*. at 3, ¶¶ 10–12.)

After receiving injections from the physicians at Ocshner, which did not work, she sought care from Baton Rouge physicians who discovered on diagnostic testing that "the Stryker knee implant was coming apart." (*Id*. at 4, ¶ 16.) "The x-ray indicated, 'left knee, tibia component looks loose and kicked forward' [and] [t]he diagnosis was 'painful loose left total knee.'" (*Id*.; *see also id*. at 5, ¶ 25.) While the implant was supposed to be "even," it wasn't, and Plaintiff's physician told her that "the Stryker implant was breaking." (*Id*. at 5, ¶ 20.)

On July 14, 2018, a second total knee operation to replace the Stryker device was done at Our Lady of the Lake Regional Medical Center in Baton Rouge by Dr. Robert Easton. (*Id*. at 5–6, ¶ 25.) The replacement implant was manufactured by another company and "functioned as the Stryker was supposed to [have] function[ed]." (*Id*. at 13, ¶ 58.) Dr. Easton told Plaintiff that "the

2

Stryker should not have been put in there, because it was malfunctioning and under recall and it is coming apart." (*Id*. at 4–5, ¶ 19.) After the second surgery, her condition greatly improved. (*Id*. at 6, ¶ 26.)

In her *Amended Complaint*, Plaintiff sues for product liability (*id*. at 10, ¶ 46) alleging that the Stryker device was defective and unreasonably dangerous in design (*id*. at 10–11, ¶¶ 47–51; *see also id.* at 7, ¶¶ 33, 34); breached implied warranties (*id*. at 12, ¶¶ 52–56); was defective in manufacture and breached express warranties (*id*. at 12–13, ¶¶ 57–60; *see also id*. at 8, ¶¶ 39–40); failed to provide adequate instructions and warnings (*id*. at 13, ¶ 61). In addition, she sues for redhibition under Louisiana law. (*Id*. at 14, ¶¶ 62–67.)

### III.    ARGUMENTS OF THE PARTIES

#### A.  Defendants

Defendants argue that Plaintiff's allegations in her *Amended Complaint* failed to cure the deficiencies identified in the Court's original ruling, namely: the fact that Plaintiff suffered a bad outcome and was injured "does not necessarily imply a defectively manufactured product." (Doc. 25-1 at 5 (quoting Doc. 22 at 9).) Plaintiff's reference to the failure of the Stryker implant to perform like those manufactured by others is irrelevant since, for purposes of the "construction and composition" claim, Plaintiff must allege that the product deviated from Defendants' on performance or specification standards. (*Id*.) This, she fails to do.

Plaintiff's allegations of defective design are deficient, contend Defendants, because Plaintiff has failed to describe the design defect, has not alleged that there existed an alternative design for the device at issue that was capable of preventing her damages—an essential element of every design defect claim—and has not alleged that the burden on the manufacturer of developing such a device outweighed the dangers posed by the current device. (Doc. 25-1 at 6.)

3

Plaintiff has also failed to "allege how the design defect [was] either caused by or relates to the injury in question." (*Id*.)

As to Plaintiff's allegations of inadequate warning, Defendants urge that these fall short of what is required because they fail to allege "with sufficient particularity the risks, not otherwise known to the surgeon, which were not adequately warned of. Nor does Plaintiff allege that, but for the insufficient warning, her surgeon would not have used the product." (*Id*. at 8.)

Defendants contend that Plaintiff's allegations regarding breach of express warranty fail to identify, even in a general way, the defects in the product which make it unsafe and unreasonably dangerous and therefore fails to identify how Defendants' representations were untrue. (*Id*. at 9.) Further, the allegations still fail to allege that her damage was proximately caused because the express warranty was untrue." (*Id*.)

Plaintiff's allegations under Louisiana law which do not arise directly under the Louisiana Products Liability Act ("LPLA") (intentional misrepresentation, breach of implied warranty, and redhibition) do not state a claim for which relief can be granted because a plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." (*Id*. at 9–10 (quoting La. R.S. 9:2800.52) (other citations omitted).)

### B. Plaintiff

Plaintiff responds that her allegations regarding defective composition or construction are sufficient because a complaint is not required to contain:

> a detailed technical description of deviations from the product's performance standards and specifications to be sufficient for Rule 12(b)(6) purposes as long as the complaint's description of the product failure is such that "the Court's experience and common sense" can lead the Court to the conclusion that "discovery could be reasonably expected to reveal relevant information as to plaintiff['s] claim[ ] for construction or composition defect under the LPLA."

4

(Doc. 29 at 2 (quoting this Court's ruling, *Morel v. Pinnacle Entm't,* No. 16-627, 2017 WL 3719975, at *6 (M.D. La. May 19, 2017) (deGravelles, J.)).) She then points the Court to paragraphs 6 through 17 of her *Amended Complaint* which she contends more than meets this requirement. (Doc. 29 at 2–3.)

As to the *Amended Complaint*'s allegations regarding defective design, Plaintiff contends that the "many implants that did not come apart shortly after being implanted already on the market speaks to the availability of an alternative design." (Doc. 29 at 4.) In the *Amended Complaint*'s section on "Defects and Design Errors," Plaintiff points the court to FDA recalls of the Stryker Orthopedics Triathlon femoral component that it alleges demonstrate defective design. (Doc. 24 at 6–8, ¶¶ 28–32, 35–36, 38.) As to the weighing of the burden of the alternative design versus the gravity of the harm, Plaintiff alleges "[t]he likelihood that the products design would cause a surgery to remove and replace the defective implant and the gravity of that damage outweighed the burden on Stryker to adopt an alternative design that did not come apart once implanted." (*Id*. at 7, ¶ 34.)

Plaintiff urges that its allegations regarding failure to warn are also sufficient. (Doc. 29 at 4–5.) In the *Amended Complaint*, Plaintiff alleges that Stryker failed to provide adequate warning "regarding the effective life [of] the knee implant or that it could come apart and risk loss of limb." (Doc. 24 at 13, ¶ 61.) She alleges that her doctors at Ocshner failed to receive an adequate warning "so that the doctors could select another product for use" and that [t]he inadequate warning of the defects caused or contributed to the doctor at Ocshner selecting the defective Stryker instead of another prosthetic knee implant." (*Id*.)

Plaintiff addresses the issue of express warranty by representing that Stryker "advertised that the implant would last 10 years or more" (Doc. 29 at 8 (quoting *Amended Complaint*, Doc.

5

24 at 8, ¶ 40)) and "advertised the [Stryker implant would] provide up to twenty years of use. A 2014 study showed 97.1% survivorship at up to 20 years." (*Id*. ¶ 39). In sum, "the warranty expressed was [that the implant] would last. The knee prosthesis came apart and failed almost immediately." (Doc. 29 at 8.) Plaintiff states that the only non-LPLA claim she is asserting in her *Amended Complaint* is in redhibition. (*Id*.) She concedes that she cannot assert a redhibition claim against the manufacturer of a product for injuries but insists she can do so for economic losses. (*Id*. at 9 (citing *Boutte v. Stryker*, 67 F. Supp. 3d 732, 739–41 (M.D. La. 2014) (citing *Pipitone v. Biotech, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002))).)

### IV. STANDARD

In *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S. Ct. 346, 346 (2014), the Supreme Court explained: "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

6

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; Twombly, 55[0] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco,* 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id*. at 503.

V.   **DISCUSSION**

"The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. Rev. Stat. Ann. § 9:2800.54(A). Thus, as the Fifth Circuit has explained:

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous";

7

and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002) (citing La. Rev. Stat. Ann. § 9:2800.54(A)).

A product is "unreasonably dangerous" under the LPLA "if and only if" the product is (1) "unreasonably dangerous in construction or composition"; (2) "unreasonably dangerous in design"; (3) "unreasonably dangerous because an adequate warning about the product has not been provided"; and (4) the product fails to "conform to an express warranty of the manufacturer about the product." La. Rev. Stat. Ann. § 9:2800.54(B) (citing La. Rev. Stat. Ann §§ 9:2800.55 – 58).

In her *Amended Complaint*, Plaintiff alleges that Defendants are liable under all four theories available under the LPLA. These will be considered separately.

### A. Construction/Composition

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. Ann. § 9:2800.55. Here, Defendants argue that Plaintiff's allegations in her *Amended Complaint* failed to cure the deficiencies identified in the Court's original ruling, namely: the fact that Plaintiff suffered a bad outcome and was injured "does not necessarily imply a defectively manufactured product." (Doc. 25-1 at 5 (quoting Doc. 22 at 9).) Plaintiff's reference to the failure of the Stryker implant to perform like those manufactured by others is irrelevant since, for purposes of the "construction and composition" claim, Plaintiff must allege that the product deviated from Defendants' on performance or specification standards. (*Id.*) And Plaintiff fails to do so.

8

The Court disagrees with Defendants and finds that Plaintiff's allegations are adequate. In *Morel v. Pinnacle Entm't, Inc.*, No. 16-627, 2017 WL 3719975, at *5–6 (M.D. La. May 19, 2017), this Court held it is not necessary for the complaint to provide a detailed technical description of deviations from the product's performance standards and specifications to be sufficient for Rule 12(b)(6) purposes as long as the complaint's description of the product failure is such that "the Court's experience and common sense" can lead the Court to the conclusion that "discovery could be reasonably expected to reveal relevant information as to plaintiff['s] claim[ ] for construction or composition defect under the LPLA." *Morel*, 2017 WL 3719975, at *5 (quoting *Bertrand v. Eli Lilly & Co.*, No. 12-0853, 2013 WL 12184299, at *7 (W.D. La. Mar. 13, 2013)). The reasoning supporting the Courts' rulings on this point in *Morel* and *Bertrand* was that in products liability cases involving highly technical designs, Defendants may well be in exclusive control of the product's "specifications or performance standards" necessary to identify with particularity deviations therefrom and that discovery may well be the only mechanism by which to obtain same. As the Court held in *Bertrand*, requiring a complaint to contain allegations of specific specifications violated when those specifications are in the sole possession of the defendant would make such a case "essentially impossible to bring in federal court. Clearly, that was not the intent of *Iqbal* or *Twombly*." *Bertrand*, 2013 WL 12184299, at *7–8; *accord Morel*, 2017 WL 3719975, at *6.

In *Morel*, the plaintiff alleged she was injured when she was thrown from a chair manufactured by the defendant. She alleged that "[t]he chair is manufactured to swivel back to the front after the person seated gets out of the chair." *Morel*, 2017 WL 3719975, at *1, *4. The "chair did not swivel back to the front when she got out of the chair but instead, when she went to sit back down in the chair, it rapidly and violently swung forward, throwing [her] to the floor,

9

causing [her] to suffer a broken pelvis and back pain." *Id*. The Court found that, although a "close call," these allegations sufficiently pled an LPLA claim for defective construction and composition. *Id*. at *5.

In this case Plaintiff alleges that, not long after the Stryker knee was implanted, Plaintiff "suffered severe chronic pain and joint instability and limitations" including not being able to walk on the affected leg, having to use a cane for support, having to lift her left leg with her hands in order to get into a car, having her left knee become "stuck and lock up" and having to build a ramp for access. (Doc. 24 at 3, ¶¶ 10–12.) After receiving injections from the physicians at Ocshner, which did not work, she sought care from Baton Rouge physicians who discovered on diagnostic testing that "the Stryker knee implant was coming apart." (*Id*. at 4, ¶ 16.) "The x-ray indicated, 'left knee, tibia component looks loose and kicked forward' [and t]he diagnosis was 'painful loose left total knee.'" (*Id*.; *see also id*. at 5, ¶ 25.)

While the implant was supposed to be "even," it wasn't, and Plaintiff's physician told her that "the Stryker implant was breaking." (*Id*. at 5, ¶ 20.) Her doctor told her "the Stryker hardware was failing. The doctor said the knee implants and the Stryker were not supposed to fall apart like it was and it was not supposed to come apart. The doctor told her the Stryker implant had a defect." (*Id*. at 4, ¶ 14.) Plaintiff details several recalls of the Stryker implant, including one which occurred only 6 months after her operation (*id*. at 6–8, ¶¶ 27–38) including one which found "press fit specifications between the dowel pin and the mating hole in the shaft were not being achieved potentially resulting in disassociation from the instrument." (*Id*. at 6–7, ¶ 30). The Court finds these allegations sufficiently plead an LPLA claim for defective construction and composition.

### B. Defective Design

A plaintiff proves a defective design claim by showing that, at the time the product left its manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

La. Rev. Stat. Ann. § 9:2800.56.

"This Court has found that a complaint sufficiently pleads a design defect claim by alleging an alternative design in general terms, including the general characteristics of the alternative design." *Baudin v. AstraZeneca Pharm. LP*, 413 F. Supp. 3d 498, 506 (M.D. La. 2019) (citing *Boutte v. Stryker Biotech, LLC*, 67 F. Supp. 3d 732, 736–37 (M.D. La. 2014); *Crochet v. Bristol-Myers Squibb*, No. 16-36, 2016 WL 3580670, *3 (M.D. La. June 28, 2016); and *Brooks v. Amgen, Inc.*, No. 18-657, 2019 WL 507491, *5 (M.D. La. Feb. 8, 2019)). This Court has also found that the requirement that a plaintiff plead that the gravity of harm outweighs the burden to the manufacturer of adopting the suggested alternative design is satisfied by allegations that the design of other existing comparable products does not contain the risks associated with the defendant's product. *Id. at 507* (finding that "[t]he Complaint sufficiently alleges that the risk of gastric cancer outweighs the burden of utilizing alternative H2 receptor antagonist pharmaceuticals in lieu of PPI's.")

Here, Plaintiff alleges that Stryker's design allowed the implant's "component parts [to] come apart and dissociate after implantation. . ." (Doc. 24 at 6, ¶ 27.)[1] Plaintiff details that this

---

[1] While Plaintiff alleges that there were numerous other recalls (Doc. 24 at 6–8, ¶¶ 28–38), she does not make clear how these played a role in her injury. Thus, the Court did not consider these for the purposes of Plaintiff's design

11

defect was due to "press fit specifications between the dowel pin and the mating hole in the shaft were not being achieved potentially resulting in disassociation from the instrument," which was admitted by Stryker as a part of a recall. (*Id*. at 6–7, ¶ 30.) Plaintiff alleges that the replacement implant she received at Our Lady of the Lake Regional Medical Center in Baton Rouge, not a Stryker implant, did not come part, "was not getting stuck and [she] was pain free." (*Id*. at 5–6, ¶¶ 25–26.) "The likelihood that the product's design would cause a surgery to remove and replace the defective implant and the gravity of that damage outweighed the burden on Stryker to adopt an alternative design that did not come apart once implanted." (*Id*. at 7, ¶ 34.) The Court finds that Plaintiff has adequately plead a claim for design defect under the LPLA.

### C. Inadequate Warnings

To prove that an adequate warning was not given, Plaintiff must show that, "at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. Rev. Stat. Ann. § 9:2800.57(A). With this theory, there are certain circumstances where a manufacturer is not required to provide an adequate warning. La. Rev. Stat. Ann. § 9:2800.57(B). "Importantly, such a claim requires the plaintiff to show both: (1) the inadequacy of the warning provided *and* (2) that the inadequate warning was the cause of his injuries." *Brocato v. DePuy Orthopaedics, Inc.*, No. 14-2607, 2015 WL 854150, at *6 (E.D. La. Feb. 25, 2015) (Shushan, M.J.).

Defendants allege Plaintiff's allegations regarding warning are insufficient in that they fail to allege "with sufficient particularity the risks, not otherwise known to the surgeon, which

---

defect claim. *Batiste v. Stryker Corp*, 2020 WL 3451690, at *7 (refusing to consider allegations of recall that were not alleged in the Complaint and which were "not tied in any way to Plaintiff's operation or the damages she suffered").

were not adequately warned of. Nor does Plaintiff allege that, but for the insufficient warning, her surgeon would not have used the product." (Doc. 25-1 at 8.) Plaintiff counters that her allegations are sufficient. (Doc. 29 at 4–5.)

In the *Amended Complaint*, Plaintiff alleges that Stryker failed to provide adequate warning "regarding the effective life [of] the knee implant or that it could come apart and risk loss of limb." (Doc. 24 at 13, ¶ 61.) She alleges that her doctors at Ocshner failed to receive an adequate warning "so that the doctors could select another product for use" and that "[t]he inadequate warning of the defects caused or contributed to the doctor at Ocshner selecting the defective Stryker instead of another prosthetic knee implant." (*Id.*) The Court finds that Plaintiff's allegations are sufficient in her failure to warn claim.

### D.  Breach of Express Warranty

To state a viable claim that a product is "unreasonably dangerous because of nonconformity to express warranty," a plaintiff must demonstrate that (1) an express warranty existed, (2) he or she was induced to purchase the product due to the warranty, and (3) his or her damage was proximately caused because the express warranty was untrue. La. Rev. Stat. Ann. § 9:2800.58.

Defendants contend that Plaintiff's allegations regarding breach of express warranty fail to identify, even in a general way, the defects in the product which make it unsafe and unreasonably dangerous and therefore fails to identify how Defendants' representations were untrue. (Doc. 25-1 at 9.) Further, the allegations still fail to allege that her damages were proximately caused because the express warranty was untrue. (*Id.*) Plaintiff responds by representing that Stryker "advertised that the implant would last 10 years or more" (Doc. 29 at 8 (quoting the *Amended Complaint*, Doc. 24 at 8, ¶ 40)) and "advertised the [Stryker implant

13

would] provide up to twenty years of use. A 2014 study showed 97.1% survivorship at up to 20 years." (*Id*. ¶ 39.) In sum, "the warranty expressed was [that the implant] would last. The knee prosthesis came apart and failed almost immediately." (Doc. 29 at 8.)

The Court finds that Plaintiffs allegations meet the pleading requirements necessary to state a cause of action under La. Rev. Stat. Ann. § 9:2800.58.

### E.  Non-LPLA Causes of Action

Defendants argue that Plaintiff's allegations under Louisiana law which do not arise directly under the LPLA, (intentional misrepresentation, breach of implied warranty, and redhibition) do not state a claim for which relief can be granted because a plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." (Doc. 25-1 at 9–10 (citing La. Rev. Stat. Ann. § 9:2800.52; other citations omitted).) Plaintiff insists that the only non-LPLA claim she is asserting in her *Amended Complaint* is in redhibition. (Doc. 29 at 8.) This is not correct as Plaintiff has alleged a cause of action for breach of implied warranty. (Doc. 24 at 12, ¶¶ 53–56.) Because of the LPLA's exclusivity provision, this cause of action must be dismissed. *See Batiste v. Stryker Corp.*, 2020 WL 3451690, at *10; *Cooper v. Wyeth, Inc.*, No. 09-929, 2010 WL 2653321, at *2 (M.D. La. June 25, 2010) ("The Court finds that these claims [including a claim for breach of implied warranty] do not fall into one of the four categories recognized by the LPLA, and thus, the Court dismisses these claims pursuant to Rule 12(b)(6) because they do not state a cognizable action under Louisiana law.") This part of Defendants' motion is granted.

Plaintiff concedes that she cannot assert a redhibition claim against the manufacturer of a product for injuries but insists she can do so for economic losses. (Doc. 29 at 9 (citations omitted).) In its earlier ruling, this Court held that a redhibition claim for economic loss may be

14

combined with a claim under the LPLA. *Batiste v. Stryker Corp.*, 2020 WL 3451690, at *10 (citing *Harris v. Merck & Co.*, No. 12-1446, 2012 WL 5384720, at *6 (W.D. La. Nov. 1, 2012)); *Baudin*, 413 F. Supp. 3d at 514. Unlike Plaintiff's original Petition, the *Amended Complaint* adequately pleads a cause of action in redhibition for economic loss. (Doc. 24 at 14, ¶¶ 62–67.) This part of Defendants' motion is therefore denied.

## VI.   CONCLUSION

For the foregoing reasons, *Defendants' Second Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim* (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' *Motion* is granted in that Plaintiff's cause of action for breach of implied warranty is **DISMISSED WITH PREJUDICE**. In all other respects, Defendant's *Motion* is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 26, 2021</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**